Sabita J. Soneji (CA Bar No. 224262)
*ssoneji@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808

*Attorney for Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DEMETRIO ABENOJA, *on behalf of himself and all others who are similarly situated*,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PATELCO CREDIT UNION,<br><br>　　　　Defendant. | Case No. 4:24-cv-4422<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Demetrio Abenoja ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Patelco Credit Union and alleges the following based on personal knowledge of facts pertaining to him and the investigation of counsel as to all other matters:

## **NATURE OF THE ACTION**

1.      Patelco Credit Union ("Patelco") is one of the largest credit unions in the nation, servicing communities across Northern California.[1] This class action arises out of a recent cyberattack and data breach ("Data Breach") that resulted in the theft and exfiltration by a known cybercriminal organization who illegally obtained and released the personal data of some Patelco's retail bank customers on the dark web, including, at a minimum, name, address, contact information, Social Security Number and accounts numbers ("PII").

2.      Patelco's business model involves collecting consumers' PII. This information is retained not only to facilitate the delivery of banking services but also to serve Patelco's business interests and generate profits.

3.      Upon information and belief, Patelco made promises and representations to its customers, including Plaintiff and Class Members, that the PII collected from them as a condition of obtaining services at Patelco would be kept safe, confidential, that the privacy of that information would be maintained, and that Patelco would delete any sensitive information after it was no longer required to maintain it.

4.      But in June 2024, Patelco failed to protect the information of Patelco customers who entrusted it with their PII. On or about June 29, 2024, Patelco announced, via its website, that Patelco Credit Union experienced a cybersecurity incident that we subsequently confirmed was a ransomware attack. This is a type of cyber-attack where a hacker illegally enters a company's network, blocks access to some parts, then demands a ransom to resolve the damage they have done.[2]

5.      By collecting and retaining Plaintiff's and the Class Members' PII for its own

[1] https://www.patelco.org/about-patelco/who-we-are
[2] https://www.patelco.org/securityupdate

CLASS ACTION COMPLAINT

1  financial benefit, Patelco assumed a duty to Plaintiff and the Class Members to implement and

2  maintain reasonable and adequate security measures to secure, protect, and safeguard their PII

3  against unauthorized access and disclosure. Patelco also had a duty to safeguard this PII under

4  applicable case law, industry standards, and statutory obligations, including Section 5 of the

5  Federal Trade Commission Act (the "FTC Act").

6        6.    But Patelco breached those duties by, among other things, failing to implement and

7  maintain reasonable security procedures and practices to protect the PII in its possession. The Data

8  Breach was directly traceable to Patelco's failure to implement proper security protocols and,

9  among other things, neglecting to implement adequate and reasonable measures to secure

10 consumers' data systems against unauthorized intrusions; withholding disclosure regarding

11 insufficiently robust computer systems and security practices to safeguard PII; omitting standard

12 and reasonably available steps to prevent the Data Breach; and inadequately training its staff and

13 employees on proper security measures. Patelco also neglected proper monitoring of its network,

14 which could have detected the intrusion before the thieves exfiltrated the PII or potentially

15 prevented the intrusion altogether.

16       7.    Because of Patelco's acts and omissions, Plaintiff's and the Class Members' PII is

17 now in the hands of  Now, Plaintiff and the Class Members must diligently monitor their financial

18 accounts to thwart potential identity theft. They will need to bear out-of-pocket expenses for and

19 spend time on credit monitoring, obtaining identity theft protection, retrieving and reviewing credit

20 reports, and taking other protective measures—both now and in the future. Plaintiff and the Class

21 Members have suffered diminished value to their bargain with Patelco, out-of-pocket expenses

22 associated with protecting their privacy and security, and the value of their time spent addressing

23 or mitigating the effects of the attack.

24       8.    Moreover, Patelco still maintains Plaintiff's and the Class Members' PII. Without

25 additional safeguards and independent review, this information remains susceptible to further

26 cyberattacks and theft.

27       9.    Plaintiff and members of the Class have suffered irreparable harm, including the

28 exposure of their PII to nefarious strangers and their significantly increased risk of identity theft.

1   The information at issue here is the very kind of information that allows identity thieves to

2   construct false identities and invade all aspects of Plaintiff's and the Class Members' lives. In

3   addition to facing the emotional devastation of having such personal information fall into the

4   wrong hands, Plaintiff and the Class members must now undertake additional security measures

5   and precautions to minimize their risk of identity theft. And the ongoing risk to Plaintiff and the

6   Class Members will persist throughout their lifetimes.

7                                                  **PARTIES**

8          10.     Plaintiff Demetrio Abenoja is and at all relevant times has been a citizen of

9   Discovery Bay, California.

10         11.     Plaintiff has an account with Patelco. Plaintiff provided his PII to Defendant Patelco

11   in connection with his accounts.

12         12.     Plaintiff is deeply concerned about the Data Breach, as his PII is now readily

13   available for cybercriminals to sell, buy, or exchange on the Dark Web.

14         13.     Plaintiff has a continuing interest in ensuring that his PII, which remains in

15   Patelco's possession, is protected and safeguarded from future breaches.

16         14.     Patelco is a non-profit corporation with its headquarters and principal place of

17   business located at 3 Park Pl., Dublin, California 94568.

18                                   **JURISDICTION AND VENUE**

19         15.     This Court has original subject matter jurisdiction under the Class Action Fairness

20   Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 putative class

21   members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

22   Minimal diversity is established because members of the class are citizens of states different than

23   that of Defendant.

24         16.     This Court has personal jurisdiction over Patelco because its principal place of

25   business is located in this District, and it regularly transacts business in this District.

26         17.     Venue is proper in this District under 28 U.S.C. § 1391(a)(1) because Patelco's

27   principal place of business is located in this District and a substantial part of the events giving rise

28   to this action occurred in this District.

**FACTUAL ALLEGATIONS**

**A.    Patelco's business.**

18.     With $9 billion in assets and over 450,000 members nationwide, Patelco is one of the largest credit unions in the nation.[3]

19.     Patelco requires customers to provide their PII to facilitate banking services and for its own business purposes. In return, Patelco promises to keep consumers' PII secure and not share it with unauthorized third parties.

20.     Plaintiff and the Class Members entrusted their PII to Patelco with the reasonable expectation and mutual understanding that Patelco would fulfill its obligations to maintain the confidentiality and security of their information, safeguarding it against unauthorized access.[4]

**B.    Patelco failed to protect Class Members' private information.**

21.     Despite Patelco's assurances that it would employ reasonable measures to safeguard consumers' PII and only share that information with expressly authorized individuals, Patelco allowed a cybercrime group to infiltrate its systems and steal the PII of its customers.

22.     On or about July 1, 2024, Patelco posted a notice to its website concerning the breach (the "Notice"):

> On June 29, 2024 Patelco Credit Union experienced a ransomware attack. Unfortunately, this incident has required us to proactively shut down some of our day-to-day banking systems in order to contain and remediate the issue. Importantly, members can still access cash from ATMs. We have engaged a leading third-party cybersecurity forensic firm to help us to investigate and recover as soon as possible. Please know that our team and third-party partners are working around the clock to get back up and running. We are committed to providing transparent and frequent updates to best of our ability as well as the best possible service that we can, given the disruption. We sincerely apologize for the inconvenience that this cyber-attack has caused for our members. We anticipate longer than normal wait times and truly appreciate your patience and support during this difficult time.[5]

23.     Patelco's Notice also lacks sufficient details to put consumers on notice of the threats to their privacy. Patelco's Notice admits that there was "ransomware attack." Plaintiff and

---

[3] https://www.patelco.org/about-patelco/who-we-are
[4] *Id.*
[5] https://www.patelco.org/securityupdate

CLASS ACTION COMPLAINT

the Class Members remain in the dark about the extent of the data breach; the specific data stolen; and the measures, if any, being implemented to safeguard their PII moving forward. Indeed, Patelco's Notice did not identify the threat actor—or even that the data was stolen. Plaintiff and the Class Members are left to speculate about the complete ramifications of the Data Breach and the precise strategies Patelco plans to employ to enhance its information security systems and monitoring capabilities in order to avert future breaches.

**C.      The Data Breach is directly traceable to Patelco's acts and omissions, including its negligence and the breach of its duties to Plaintiff and the Class.**

24.    Patelco is responsible for allowing the Data Breach to occur because it failed to implement and maintain reasonable safeguards, failed to comply with industry-standard data security practices, as well as federal and state laws and regulations governing data security, and failed to supervise, monitor, and oversee all third parties it hired who had access to Plaintiff's and the Class members' PII.

25.    During the Data Breach, Patelco failed to adequately monitor its information technology infrastructure. Had Patelco done so, it would have prevented or mitigated the scope and impact of the Data Breach.

26.    By obtaining, collecting, and using Plaintiff's and the Class Members' PII, Patelco assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and the Class Members' PII from disclosure.

27.    Plaintiff's and the Class Members' PII was provided to Patelco with the reasonable expectation and understanding that Patelco would comply with its obligations to keep such information confidential and secure from unauthorized access.

28.    Cyberattacks have become so prevalent that the FBI and U.S. Secret Service have issued warnings to potential targets, urging them to be aware of and prepared for potential attacks.[6]

29.    Patelco's data security obligations were particularly important given the substantial

---

[6] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974

CLASS ACTION COMPLAINT

1    increase in cyber and ransomware attacks and data breaches in the financial services industries

2    preceding the date of the Data Breach, as well as given the incredibly sensitive nature of PII that

3    it retained in its servers.

4          **D.**      **Patelco failed to comply with FTC guidelines.**

5          30.      The FTC Act, 15 U.S.C. § 45, prohibits Patelco from committing "unfair or

6    deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC")

7    has determined that a company's failure to uphold reasonable and appropriate data security for

8    consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

9          31.      The FTC has issued guidelines for businesses emphasizing the significance of

10   adopting reasonable data security practices. According to the FTC, integrating data security

11   considerations into all aspects of business decision-making is imperative.

12         32.      In 2016, the FTC issued an updated version of its publication, "Protecting Personal

13   Information: A Guide for Business," which established cyber-security guidelines for businesses.[7]

14   These guidelines underscored the importance for businesses to safeguard personal customer

15   information, securely dispose of unnecessary personal data, encrypt information stored on

16   computer networks, assess network vulnerabilities, and institute policies to address security issues

17   promptly. Additionally, the guidelines recommend using intrusion detection systems to promptly

18   detect breaches, monitoring incoming traffic for signs of hacking attempts, being vigilant about

19   large data transmissions, and having a response plan prepared in the event of a breach.[8]

20         33.      The FTC also advises that companies not retain PII longer than necessary for

21   transaction authorization, restrict access to sensitive data, enforce the use of complex passwords

22   on networks, employ industry-tested security methods, monitor the network for suspicious activity,

23   and ensure that third-party service providers have implemented adequate security measures.

24         34.      The FTC has brought enforcement actions against businesses for failing to protect

25

26   ---
[7] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016),
27   https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-
information.pdf
28   [8] *Id.*

CLASS ACTION COMPLAINT

customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice.

35.     Patelco failed to properly implement basic data security practices by failing to employ reasonable and appropriate measures to protect against unauthorized access to customers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

36.     Patelco was at all times fully aware of the obligation to protect the PII of customers, as demonstrated by the existence of its Privacy Policy. Patelco was also aware of the significant repercussions that would result from their its failure to do so.

**E.     Patelco failed to comply with industry standards.**

37.     Companies like Patelco are particularly vulnerable to cyberattacks because of the sensitive nature of the information that they collect and maintain. Because of this vulnerability, and because of the frequency and scale of data breaches in recent years, companies like Patelco that routinely handle and maintain sensitive customer information should, at a minimum, implement industry best practices.

38.     These practices include educating and training employees; requiring strong passwords and multi-factor authentication for employees and users; implementing multi-layer security like firewalls, antivirus programs, and anti-malware software; limiting access to sensitive data; backing up and encrypting data; setting up network firewalls; monitoring and limiting network ports; and monitoring and limiting access to physical security systems.

39.     Patelco failed to meet the minimum standards of any of the following frameworks laying out industry best practices: the NIST Cybersecurity Framework Version 1.1 (including at a minimum PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

40.     These frameworks represent the established industry norms for data security, and Patelco's failure to adhere to these widely accepted standards caused the Data Breach and has

provided an avenue for criminal exploitation.

**F.**      **Plaintiff and the Class suffered and face substantial risk of future injuries because Patelco failed to protect their private information.**

41.      As a result of Patelco's failure to implement and adhere to security measures that would have protected their PII, Patelco customer PII is now in the hands of criminals, thieves, and other potentially malicious individuals. Consequently, Plaintiff and the Class Members are at an elevated risk of identity theft, financial fraud, and other identity-related fraud into the indefinite future.

42.      Once PII is exposed, it is nearly impossible to ensure the information is fully recovered or protected from future misuse. Thus, Plaintiff and the Class Members must now immediately allocate time, energy, and money to: (1) closely monitor their bills, records, and credit and financial accounts; (2) change login and password information on sensitive accounts more frequently; (3) rigorously screen phone calls, emails, and other communications to avoid social engineering or spear phishing attacks; and (4) search for and subscribe to suitable identity theft protection and credit monitoring services. Plaintiff and the Class Members will need to maintain these heightened protective measures for years, possibly their entire lives, due to Patelco's actions.

43.      Time is a compensable and valuable resource in the United States, and American adults have only 36 to 40 hours of "leisure time" outside of work per week. Usually, this time can be spent at the option of the consumer, but Plaintiff and the Class Members now must spend their leisure time self-monitoring accounts, communicating with financial institutions and credit reporting agencies, contacting government agencies, researching identity protection measures, and implementing self-protection measures that Patelco did not offer.

44.      Plaintiff and the Class members have also lost the inherent value of their PII and the value of their bargain with Patelco.

45.      PII is a valuable property right. Due to its significant value and the prevalence of large-scale data breaches, identity thieves and cybercriminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information on various internet websites, making it publicly accessible. Information from multiple breaches, including the Data

Breach, can be aggregated, increasing its value to thieves and amplifying the potential harm to victims.

46.     PII can be sold at prices exceeding $1,000.[9] A stolen credit or debit card number can sell for $15 to $110 on the Dark Web.[10] Criminals can also purchase access to entire company data breaches for an average cost of between $2,000 to $4,000.[11]

47.     Law-abiding consumers place a high value on the privacy of that data. Researchers shed light on how many consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[12]

48.     Accordingly, any company that conducts business with a consumer and subsequently compromises the privacy of their PII effectively deprives that consumer of the full monetary value of their transaction with the company.

49.     In sum, due to Patelco's failures, Plaintiff and the Class Members face a substantial risk of suffering identity theft, fraud, and misuse of their PII, including but not limited to: (a) damage to and diminution in the value of their PII, a form of property that Patelco obtained from Plaintiff and the Class, and loss of their bargain with Patelco; (b) violation of their privacy rights; and (c) ongoing and increased risk of identity theft and fraud, which they must spend time and money mitigating. They have had personal and sensitive PII including, reportedly, credit scores and social security numbers, exposed to the public, resulting in ongoing emotional pain, mental anguish, and embarrassment.

---

[9] Ryan Smith, *Revealed – How much is Personal information worth on the dark web?*, Insurance News (May 1, 2023), https://www.insurancebusinessmag.com/us/news/breaking-news/revealed--how-much-is-personal-information-worth-on-the-dark-web-444453.aspx

[10] Miklos Zoltan, *Dark Web Price Index 2023*, Privacy Affairs (April 23, 2023), https://www.privacyaffairs.com/dark-web-price-index-2023/

[11] Kaspersky, *Cybercriminals sell access to companies via the Dark Web from $2000* (June 15, 2022), https://www.kaspersky.com/about/press-releases/2022_cybercriminals-sell-access-to-companies-via-the-dark-web-from-2000

[12] Janice Y. Tsai et al., The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study, 22(2) Information Systems Research 254 (June 2011), accessible at https://www.jstor.org/stable/23015560?seq=1

**CLASS ACTION ALLEGATIONS**

50.    Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

51.    Plaintiff brings this action on behalf of himself and the members of the proposed Classes, consisting of:

**All individuals residing in the United States whose personal identifiable information was compromised in the Data Breach. (the "Class").**

and,

**All individuals residing in California whose personal identifiable information was compromised in the Data Breach (the "California Subclass").**

Collectively, (the "Classes").

52.    Excluded from the Class are Patelco, any entity in which Patelco has a controlling interest, and Patelco's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

53.    Plaintiff reserves the right to amend the above definition or to propose subclasses before the Court determines whether certification is appropriate.

54.    **Numerosity**: The proposed Class is so numerous that joinder of all members is impracticable. Patelco has acknowledged that the number of class members is at least 751,000.

55.    **Typicality**: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Patelco's uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive PII compromised in the same way by the same conduct of Patelco.

56.    **Adequacy**: Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class; Plaintiff has retained competent counsel who are experienced in prosecuting complex class action and data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the

Class will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

57. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. The injury suffered by each individual member of the Class is relatively small in comparison to the burden and expense of individual prosecution of litigation. It would be very difficult for members of the Class to effectively redress Patelco's wrongdoing. Further, individualized litigation presents a potential for inconsistent or contradictory judgments.

58. **Commonality and Predominance**: There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.

59. Among the questions of law and fact common to the Class are:

- Whether Patelco engaged in the wrongful conduct alleged herein;

- Whether Patelco failed to adequately safeguard Plaintiff's and the Class's PII;

- Whether Patelco owed a duty to Plaintiff and the Class to adequately protect their PII, and whether it breached this duty;

- Whether Patelco's conduct, including its failure to act, resulted in or was the proximate cause of the breach;

- Whether Patelco was negligent in permitting unauthorized access to Plaintiff's and the Class's PII;

- Whether Patelco was negligent in failing to adhere to reasonable retention policies, thereby greatly increasing the size of the Data Breach;

- Whether Patelco failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

- Whether Patelco continues to breach duties to Plaintiff and the Class;

- Whether Plaintiff and the Class suffered injury as a proximate result of Patelco's negligent actions or failures to act; and

CLASS ACTION COMPLAINT

• Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and the Classes)

60. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

61. Patelco owed a duty of care to Plaintiff and the Class Members to use reasonable means to secure and safeguard the entrusted PII, to prevent its unauthorized access and disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems, as alleged herein. These common law duties existed because Plaintiff and the Class Members were the foreseeable and probable victims of any inadequate security practices in Patelco's affirmative development and maintenance of its data security systems and its hiring of third-party providers entrusted with accessing, storing, safeguarding, handling, collecting, and/or protecting Plaintiff's and the Class Members' PII. In fact, not only was it foreseeable that Patelco and the Class Members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, Patelco also knew that it was more likely than not that Plaintiff and other Class Members would be harmed by such exposure and theft of their PII.

62. Patelco's duties to use reasonable security measures also arose as a result of a special relationship with Plaintiff and the Class Members as a result of being entrusted with their PII, which provided an independent duty of care. Plaintiff's and the Class Members' PII was entrusted to Patelco based on the understanding that Patelco would take adequate security precautions. Moreover, Patelco was capable of protecting its network and systems, and the PII it stored on them, from unauthorized access, but failed to do so.

63. Patelco breached its duties when it failed to use security practices that would protect the PII provided to it by Plaintiff and the Class Members, thus resulting in unauthorized exposure and access to their PII.

64. Patelco further breached its duties by failing to design, adopt, implement, control,

manage, monitor, update, and audit its processes, controls, policies, procedures, and protocols to comply with the applicable laws and safeguard and protect Plaintiff's and the Class Members' PII within its possession, custody, and control.

65. As a direct and proximate cause of Patelco's failure to use appropriate security practices and failure to select a third-party provider with adequate data security measures, Plaintiff's and the Class Members' PII was exposed, disseminated, and made available to unauthorized third parties.

66. Patelco admitted that Plaintiff's and the Class Members' PII was wrongfully disclosed as a result of the Data Breach.

67. But for Patelco's wrongful and negligent breach of its duties owed to Plaintiff and the Class Members, their PII would not have been compromised.

68. Neither Plaintiff nor Class members contributed to the Data Breach or subsequent misuse of their PII as described in this Complaint.

69. The Data Breach caused direct and substantial damages to Plaintiff and the Class Members, as well as the likelihood of future and imminent harm through the dissemination of their PII and the greatly enhanced risk of credit fraud and identity theft.

70. As a direct and proximate result of Patelco's negligence, Plaintiff and the Class Members have been injured and are entitled to damages in an amount to be proven at trial. Their injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data Breach not fully disclosed by Patelco, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

**COUNT II**
**NEGLIGENCE PER SE**
**(On behalf of Plaintiff and the Classes)**

71.    Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

72.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Patelco of failing to use reasonable measures to protect PII.

73.    Patelco violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with industry standards. Patelco's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach.

74.    Patelco's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

75.    Plaintiff and the Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

76.    Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of Patelco's failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class Members.

77.    As a direct and proximate result of Patelco's negligence, Plaintiff and the Class Members have been injured and are entitled to damages in an amount to be proven at trial. Their injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data

15

Breach not fully disclosed by Patelco, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff and the Classes)**

78.     Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

79.     Plaintiff and the Class Members entered into an implied contract with Patelco when they obtained products or services from Patelco, or otherwise provided PII to Patelco.

80.     As part of these transactions, Patelco agreed to safeguard and protect the PII of Plaintiff and the Class Members.

81.     Plaintiff and the Class Members entered into the implied contracts with the reasonable expectation that Patelco's data security practices and policies were reasonable and consistent with legal requirements and industry standards.

82.     Plaintiff and the Class Members would not have provided and entrusted their PII to Patelco in the absence of the implied contract or implied terms between them and Patelco. The safeguarding of the PII of Plaintiff and the Class Members was part of the basis of the parties' bargain.

83.     Plaintiff and the Class Members fully performed their obligations under the implied contracts with Patelco.

84.     Patelco breached their implied contracts with Plaintiff and the Class Members to protect their PII when they (1) failed to take reasonable steps to use safe and secure systems to protect that information; and (2) allowed the theft of that information by unauthorized third parties.

85.     As a direct and proximate result of Patelco's breach of implied contract, Plaintiff and the Class Members have been injured and are entitled to damages in an amount to be proven at trial. Their injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and

16

1    economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss

2    and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII;

3    illegal sale of the compromised PII on the black market; mitigation expenses and time spent on

4    credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response

5    to the Data Breach reviewing bank statements, credit card statements, and credit reports, among

6    other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and

7    ratings; lost work time; lost value of the PII; the amount of the actuarial present value of ongoing

8    high-quality identity defense and credit monitoring services made necessary as mitigation

9    measures because of Patelco's Data Breach; lost benefit of their bargains and overcharges for

10   services or products; nominal and general damages; and other economic and non-economic harm.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Classes)**

13        86.    Plaintiff repeats and realleges each and every fact, matter, and allegation set forth

14   above and incorporates them at this point by reference as though set forth in full.

15        87.    Plaintiff and the Class Members have an interest, both equitable and legal, in the

16   PII they provided Patelco and that was ultimately stolen in the Data Breach.

17        88.    Patelco benefitted from receiving Plaintiff's and the Class Members' PII, and by its

18   ability to retain, use, sell, and profit from that information. Patelco accepted and was aware of the

19   benefits conferred upon it by Plaintiff and the Class Members.

20        89.    Patelco also understood and appreciated that the PII pertaining to Plaintiff and the

21   Class Members was private and confidential and its value depended upon Patelco maintaining the

22   privacy and confidentiality of that PII except as expressly agreed.

23        90.    But for Patelco's willingness and commitment to maintain its privacy and

24   confidentiality, Plaintiff and the Class Members would not have provided PII to Patelco or would

25   not have permitted Patelco to gather additional PII.

26        91.    Plaintiff's and the Class Members' PII has an independent value to Patelco. Patelco

27   was unjustly enriched by profiting from the additional services and products it was able to market,

28   sell, and create through the use of Plaintiff's and the Class Members' PII.

17

92.     Due to Patelco's actions, Patelco unjustly obtained benefits equivalent to the disparity in value between the payments made for services with reasonable data privacy and security measures, and the services received, which lacked such measures.

93.     It is inequitable, unfair, and unjust for Patelco to retain these wrongfully obtained benefits. Patelco's retention of wrongfully obtained monies would violate fundamental principles of justice, equity, and good conscience.

94.     The benefit conferred upon, received, and enjoyed by Patelco was not conferred officiously or gratuitously, and it would be inequitable, unfair, and unjust for Patelco to retain the benefit.

95.     Patelco's defective security and its unfair and deceptive conduct have, among other things, caused Plaintiff and the Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their PII and has caused the Plaintiff and the Class Members other damages as described herein.

96.     Plaintiff and the Class Members have no adequate remedy at law.

97.     Patelco is therefore liable to Plaintiff and the Class Members for restitution or disgorgement in the amount of the benefit conferred on Patelco as a result of its wrongful conduct, including specifically: the value to Patelco of the PII that was stolen in the Data Breach; the profits Patelco received and is receiving from the use of that information; and the amounts that Patelco overcharged Plaintiff and the Class Members for use of Patelco's products and services.

**COUNT V**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (UCL)**
**CAL. BUS. & PROF. CODE § 17200, ET SEQ.**
**(On behalf of Plaintiff and the California Subclass)**

98.     Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

99.     Patelco engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, et seq. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

100.     Patelco's conduct is unlawful because it violates the California Consumer  Privacy

1  Act of 2018, Civ. Code § 1798.100, et seq. (the "CCPA"), the California Customer Records Act,

2  Cal. Civ. Code § 1798.80, et seq. (the "CRA"), and other state data security laws.

3      101.   Patelco stored the PII of Plaintiff and the Class in its computer systems and knew

4  or should have known it did not employ reasonable, industry standard, and appropriate security

5  measures that complied with applicable regulations and that would have kept Plaintiff's and the

6  Class's PII secure to prevent the loss or misuse of that PII.

7      102.   Patelco failed to disclose to Plaintiff and the California Subclass Class that their PII

8  was not secure. However, Plaintiff and the Class were entitled to assume, and did assume, that

9  Patelco had secured their PII. At no time were Plaintiff and the Class on notice that their PII was

10  not secure, which Patelco had a duty to disclose.

11     103.   Patelco also violated California Civil Code § 1798.150 by failing to implement and

12  maintain reasonable security procedures and practices, resulting in an unauthorized access and

13  exfiltration, theft, or disclosure of Plaintiff and the California Subclass nonencrypted and

14  nonredacted.

15     104.   Had Patelco complied with these requirements, Plaintiff and the California

16  Subclass would not have suffered the damages related to the data breach. Patelco's conduct was

17  unlawful, in that it violated the CCPA.

18     105.   Patelco's acts, omissions, and misrepresentations as alleged herein were unlawful

19  and in violation of, inter alia, Section 5(a) of the Federal Trade Commission Act.

20     106.   Patelco's conduct was also unfair, in that it violated a clear legislative policy in

21  favor of protecting consumers from data breaches.

22     107.   Patelco's conduct is an unfair business practice under the UCL because it was

23  immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct

24  includes employing unreasonable and inadequate data security despite its business model of

25  actively collecting PII. Patelco also engaged in unfair business practices under the "tethering test."

26  Its actions and omissions, as described above, violated fundamental public policies expressed by

27  the California Legislature. See, e.g., Cal. Civ. Code § 1798.1 ("The Legislature declares that . . .

28  all individuals have a right of privacy in information pertaining to them . . . The increasing use of

1   computers . . . has greatly magnified the potential risk to individual privacy that can occur from

2   the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the

3   Legislature to ensure that personal information about California residents is protected."); Cal. Bus.

4   & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online

5   Privacy Protection Act] is a matter of statewide concern."). Patelco's acts and omissions thus

6   amount to a violation of the law.

7       108.    Instead, Patelco made the PII of Plaintiff and the California Subclass accessible to

8   scammers, identity thieves, and other malicious actors, subjecting Plaintiff and the California

9   Subclass to an impending risk of identity theft. Additionally, Patelco's conduct was unfair under

10  the UCL because it violated the policies underlying the laws set out in the prior paragraph.

11      109.    As a result of those unlawful and unfair business practices, Plaintiff and the Class

12  suffered an injury-in-fact and have lost money or property.

13      110.    For one, on information and belief, Plaintiff's and the Class's stolen PII has already

14  been published—or will be published imminently—by cybercriminals on the dark web.

15      111.    The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing

16  benefit to consumers or competition under all of the circumstances.

17      112.    There were reasonably available alternatives to further Patelco's legitimate

18  business interests, other than the misconduct alleged in this complaint.

19                                    **COUNT VI**
    **VIOLATION OF CALIFORNIA'S CONSUMER PRIVACY ACT ("CCPA")**
20               **CAL. BUS. & PROF. CODE § 1789.150**
               **(On behalf of Plaintiff and the California Subclass)**
21

22      113.    Plaintiff repeats and realleges each and every fact, matter, and allegation set forth

23  above and incorporates them at this point by reference as though set forth in full.

24      114.    Patelco violated California Civil Code § 1798.150 of the CCPA by failing to

25  implement and maintain reasonable security procedures and practices appropriate to the nature of

26  the information to protect the nonencrypted PII of Plaintiff and the California Subclass. As a direct

27  and proximate result, Plaintiff's and the Class's nonencrypted and nonredacted PII was subject to

28  unauthorized access and exfiltration, theft, or disclosure.

CLASS ACTION COMPLAINT

115.    Patelco is a "business" under the meaning of Civil Code § 1798.140 because Patelco is a "corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners" that "collects consumers' personal information" and is active "in the State of California" and "had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year." Civil Code § 9 1798.140(d).

116.    Plaintiff and the California Subclass Class Members seek injunctive or other equitable relief to ensure Patelco hereinafter adequately safeguards PII by implementing reasonable security procedures and practices. Such relief is particularly important because Patelco continues to hold PII, including Plaintiff's and the California Subclass's PII. Plaintiff and Class members have an interest in ensuring that their PII is reasonably protected, and Patelco has demonstrated a pattern of failing to adequately safeguard this information.

117.    Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Patelco's registered service agents, detailing the specific provisions off the CCPA that Patelco has violated and continues to violate. If Patelco cannot cure within 30 days—and Plaintiff believe such cure is not possible under these facts and circumstances—then Plaintiff intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

118.    As described herein, an actual controversy has arisen regarding whether Patelco implemented and maintained reasonable security procedures and practices appropriate to the nature of the information to protect personal information under the CCPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for judgment against Patelco as follows:

A.      An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class as requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the proposed Class;

B.      For injunctive and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

CLASS ACTION COMPLAINT

1        C.     For an award of compensatory, consequential, and general damages, including

2  nominal damages, as allowed by law in an amount to be determined;

3        D.     For an award of restitution or disgorgement, in an amount to be determined;

4        E.     For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

5        F.     For prejudgment interest on all amounts awarded; and

6        G.     Such other and further relief as the Court may deem just and proper.

7                        **<u>DEMAND FOR JURY TRIAL</u>**

8  Plaintiff demands a trial by jury on all triable issues.

9

10  DATED:  July 22, 2024                   Respectfully submitted,

11

12                                 *<u>/s/ Sabita J. Soneji</u>*

                                   Sabita J. Soneji (Bar No. 224262)

13                                 **TYCKO & ZAVAREEI LLP**

                                 1970 Broadway, Suite 1070

14                                 Oakland, California 94612

                                 Telephone: (510) 254-6808

15                                 *ssoneji@tzlegal.com*

16                                 *Counsel for Plaintiff and the Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT